**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-01124-DOC-ADSx                    Date:  December 11, 2023

Title: Kairos Investment Management Company LLC et al v. J. P. Morgan Securities LLC et al

PRESENT:        THE HONORABLE DAVID O. CARTER, U.S. DISTRICT JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [19]

Before the Court is Defendant J.P. Morgan Securities LLC and J.P. Morgan Chase and Co.'s (collectively "JPM," "J.P. Morgan," or "Defendant") Motion for to Dismiss ("Motion" or "Mot.") (Dkt. 19). The Plaintiffs in this case are Kairos Investment Management Co., LLC and Kairos Manford Private Equity Fund I LP (collectively "Plaintiff"). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. For the reasons explained below, the Court GRANTS the Motion.

## I.    Background

In this case, Plaintiff alleges that J.P. Morgan misrepresented the value of Missfresh, a China-based grocery retailer, which induced Plaintiff to invest $53 million in Missfresh's Series F.

### A.    Facts

J.P. Morgan was the lead underwriter for Missfresh's initial public offering ("IPO"). Complaint ("Compl.") (Dkt. 1) ¶¶ 1, 9. Because of its role, J.P. Morgan worked closely with Missfresh's top executives and had "unbridled access to internal corporate

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-01124-DOC-ADSx                    Date: December 11, 2023

Page 2

documents." *Id.* ¶ 27. Thus, according to Plaintiff, J.P. Morgan knew better than anyone else what Missfresh's IPO price was going to be. *See id*.

Before its IPO, Missfresh wanted to raise additional funds through offering a Series F investment round. *Id.* ¶¶ 1, 12-13. Plaintiff became interested in investing and sought more information about Missfresh. *Id.* ¶ 15. In response, JPM sent a Sum-of-the-Parts ("SOTP") Valuation and, the next day, JPM hosted a conference call (the "May 26 Call") further explaining how it valued Missfresh. *Id.* ¶ 18. Plaintiff alleges that, both in the SOTP Valuation and on the May 26 Call, JPM stated that it currently valued Missfresh around $12 billion (a share price of around $16 per share).[1] *Id.*; Opp'n at 13. Between receiving this valuation and Missfresh's IPO one month later, Defendant "repeatedly assured [Plaintiff] that there was strong support for the IPO in the price range Defendants previously represented." Compl. ¶ 23.

Relying on JPM's representations, Plaintiff purchased over $53 million in Series F shares at a valuation of $3.6-billion (around $5 per share). *Id.* ¶ 21; Opp'n at 13. These Series F shares would automatically convert to common shares after Missfresh's IPO. Compl. ¶ 21.

Missfresh IPO-ed approximately one month after the May 26 Call at a valuation of $3.5 billion (again, around $5 per share). Subsequently, the markets were not kind to Missfresh: Within a couple weeks of the IPO, Missfresh was trading at less than $2 billion, and Missfresh has never traded anywhere near the $12-billion that JPM represented.[2] *Id.* ¶ 22.

### B.     Procedural History

Plaintiff filed its complaint on June 23, 2023. The Complaint alleges that Defendant's statements regarding Missfresh's $12-billion valuation was false or

---

[1] The SOTP Valuation provided that Missfresh's "[f]ully diluted equity" valuation was $10.966 billion. *Id.* ¶ 17. On the May 26 Call, a JPM representative stated that the valuation was around $12 billion. *Id.* ¶ 18. For simplicity, this opinion states that the challenged communications gave a $12 billion valuation.

[2] Around one year after the IPO, in July 2022, Missfresh released the results of an internal audit, where Missfresh admitted that its 2021 financial statements contained material inaccuracies and omissions. *Id.* ¶ 24. Consequently, Missfresh reduced its previously reported net revenues. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-01124-DOC-ADSx                     Date: December 11, 2023

Page 3

misleading in violation of Rule 10b-5(b). *Id.* ¶ 34. The Complaint also alleges that Defendant violated several provisions of California state law. *Id.* ¶¶ 35-71.

Defendant moved to dismiss all these claims on August 17, 2023. On October 5, 2023, Plaintiffs filed their Opposition ("Opp'n") (Dkt. 25). Defendant filed its Reply (Dkt. 26) on November 16, 2023.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-01124-DOC-ADSx                    Date: December 11, 2023

                                                                        Page 4

655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.    Discussion

Defendant moves to dismiss all six of Plaintiff's claims, principally arguing that Defendant's statements regarding Missfresh's valuation were non-actionable opinions or puffery.[3] The Court agrees.

### A.    Rule 10b-5(b) Claim

Rule 10b-5 declares it "unlawful," "in connection with the purchase or sale of any security," to "make any untrue statement of material fact[.]" 17 C.F.R. § 240.10b-5(b). Plaintiff identifies three of JPM's communications that, it argues, violate Rule 10b-5. The Court disagrees. The first two communications—the SOTP Valuation and JPM's comments during the May 26 Call—were opinions, not statements of fact. The third communication, where JPM assured Plaintiff that there was strong support for Missfresh's IPO at a $12-billion valuation, was puffery upon which reasonable investors do not rely.

#### 1.    The SOTP Valuation and the May 26 Call

Rule 10b-5 case law distinguishes between statements of fact and opinion. A statement of fact is one that "expresses certainty about a thing," whereas a statement of opinion "expresses a view, not a certainty," and is not "determinate [and] verifiable." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183-84 (2014).[4] In other words, statements that cannot be judged "true or false on an objective standard" are opinions. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014). When challenging an opinion statement, pleading falsity "is no

---

[3] Defendant makes several additional arguments in support of its motion. The Court does not address these arguments.

[4] Although *Omnicare* involved a Section 11 claim, the Ninth Circuit has held that its reasoning applies equally to claims under Section 10 and Rule 10b-5. *City of Dearborn Heights Act 345 Police and Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01124-DOC-ADSx                    Date: December 11, 2023

                                                                          Page 5

small task for an investor." *Omnicare*, 575 U.S. at 194. "[T]he plaintiff must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *Dearborn Heights*, 856 F.3d at 615-16 (quoting *Omnicare*, 575 U.S. at 186). A plaintiff may not plead falsity by alleging that "there is no reasonable basis for the belief." *Id.*

Here, the SOTP Valuation and the comments on the May 26 Call were opinions, not facts. In both those communications, JPM stated that Missfresh's value was $12 billion. JPM reached this valuation by multiplying Missfresh's future revenue projections and a multiplier, a value derived from the stock prices of Missfresh's competitors. The future revenue projections were opinions because "express[ed] expectations about the future rather than presently existing, objective facts." *See In re Aratana Therapeutics Inc. Sec. Litigs.*, 315 S. Supp. 3d 737, 758 (S.D.N.Y. 2018). The multiplier, similarly, was an opinion. The companies that JPM selected reflected JPM's view of what companies were similar to Missfresh. When JPM created the SOTP Valuation, there was no way to "verif[y]" whether Missfresh would perform similarly to the selected companies, and there was "uncertain[ty]" about Missfresh's future performance relative to those benchmarks. *Cf. Omnicare*, 575 U.S. at 184.

The May 26 Call confirms that the choice of the other companies used in calculating Missfresh's value was an exercise of JPM's discretion. For instance, the JPM representative on that call stated:

- "For [the retail segment of business], *we think* Shopify is the most comparable company."
- "So, from our perspective, *we believe* that we are able to penetrate to the supermarket services, powered by retail cloud. That's roughly RMB 1.9 trillion in size…so our market target is roughly RMB 2.8 trillion."
- "[W]e use the Amazon model for 2021 multiplied our projected revenue, 2021, which gives us an evaluation of around 4.7, 4.8 billion US dollars."

Ex. A to Mot. (emphasis added). JPM prefacing many of its comments regarding Missfresh's valuation calculation with phrases like "we believe" indicates that JPM offered opinions during the May 26 Call. *See Omnicare*, 575 U.S. at 183-84.

In short, the $12-billion valuation hinged on two opinions—uncertain future revenue projections and unverifiable company comparators—so that valuation, itself, was

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-01124-DOC-ADSx                    Date: December 11, 2023

Page 6

an opinion.[5] But this conclusion does not end the inquiry. JPM's opinion is actionable if JPM did not honestly believe its valuation and the valuation was objectively untrue. *See Dearborn Heights*, 856 F.3d at 615-16. The Complaint does not meet that standard.

Defendant argues that JPM could not have believed the $12 billion valuation because it priced Missfresh at $3 billion one month later when Missfresh IPO-ed. Opp'n at 16. But, on the May 26 Call, JPM never said that the $12 billion valuation was a current valuation or that it was a prediction of the IPO price. *See* Ex. A to Mot. (Dkt. 19-2), at 23 ("[O]ur current post-money valuation is around 3.5 billion US dollars, and for the IPO valuation it depends on the market…"). Instead, the $12 billion valuation appears to be a prediction of Missfresh's value at some unspecified time in the future.[6] Therefore, Missfresh's IPO valuation *in June 2021* has little bearing on whether JPM's prediction that Missfresh may *one day* be worth $12 billion was sincerely held in May 2021. The Complaint's other allegations of subjective falsity do not suffice. Simplifying a bit, Plaintiff alleges that JPM's access to unnamed corporate executives and unspecified corporate information show that JPM could not have believed its $12 billion valuation. These allegations are too general to survive a motion to dismiss. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (holding that a plaintiff alleging fraud must describe with particularity the circumstances constituting the fraud).

### 2. Statements regarding support for Missfresh's IPO

Plaintiff alleges that, between the May 26 Call and Missfresh's IPO one month later, Defendant repeatedly reassured them that there was "strong support" for the IPO in the quoted price range. These assurances are not actionable.

At the outset, the Court has doubts that these reassurances were false. Plaintiff believes that the "quoted price range" refers to the $12-billion valuation. However, the May 26 Call's transcript indicates that the "quoted price range" is likely $3.5 billion, near the valuation at which Missfresh IPO-ed. *See* Ex. A at at 23. Because the "quoted price

---

[5] Plaintiff apparently concedes that the valuation was an opinion. *See* Opp'n at 17.

[6] Another strong piece of evidence that the $12 billion valuation was neither a current valuation nor a short-term prediction of Missfresh's value is the price at which Plaintiff purchased the Series F. Plaintiff bought the Series F at $5 per share, and those shares were to convert to common stock upon Missfresh's IPO. If JPM thought that the fair market value of a share of Missfresh stock was $16 per share, it is unclear why Plaintiff received such a steep discount.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES – GENERAL

Case No.  8:23-cv-01124-DOC-ADSx                               Date: December 11, 2023

                                                                                    Page 7

range" was $3.5 billion and JPM IPO-ed at a similar valuation, the challenged statements
were not false.

        But, even if the challenged statements were false, they are non-actionable as
puffery. "When valuing corporations, investors do not rely on vague statements of
optimism like 'good,' 'well-regarded,' or other feel good monikers[.]" *In re Cutera Secs.
Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). This is because "professional
investors…know how to devalue the optimism of corporate executives." *Police Ret. Sys.
of St. Louis v. Intuitive Surg., Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (internal
quotations omitted). JPM's statements regarding "strong support" for Missfresh's IPO
fall squarely within this category of non-actionable statements. *See Melot v. JAKKS Pac.,
Inc.*, 2016 WL 6902093, at * 19 (C.D. Cal. Nov. 18, 2016) (finding the statement that a
business was "showing strong momentum" was non-actionable puffery); *Police Ret. Sys.*,
759 F.3d at 1060 (the statement "we feel positive about our prospects for the remainder
of the year" was puffery); *S.E.C. v. OwnZones Media Network, Inc.*, WL 13311398, at *5
(C.D. Cal. Sept. 17, 2020) (statements suggesting investors will enjoy large returns on
investments are "merely . . . emphatic statement[s] of opinion" and so "nonactionable
puffery").

        Therefore, Plaintiffs have failed to state a Rule 10b-5 claim.

        **B.      Causes of Action Two, Three, and Five[7]**

        Plaintiff also alleges that Defendant's conduct constituted securities fraud in
violation of Cal. Corp. Code §§ 25401, 25501, fraud and deceit in violation of Cal. Civ.
Code §§ 1709, 1710, and negligent misrepresentation. All three causes of action require
JPM to make a false statement of fact. *See People v. Butler*, 212 Cal. App. 4th 404, 420
(2012) (California securities fraud); *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)
(fraud and deceit); Compl. ¶¶ 42-52 (basing the fraud and deceit theory on a misstatement
of fact); *Borman v. Brown*, 59 Cal. App. 5th 1048, 1060 (2021) (negligent
misrepresentation).

        Plaintiff acknowledges that the challenged statements are opinions but argues that
they are actionable under the superior knowledge exception. Opp'n at 17-19. However,
Plaintiff does not identify specific facts demonstrating that JPM had superior knowledge.

_____

[7] Defendant argues that there is no personal jurisdiction over the state law claims. The Court
does not address this argument at this time since the federal claim is dismissed without prejudice.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-01124-DOC-ADSx                    Date: December 11, 2023

                                                                              Page 8

They do not, for example, identify a specific document, a confidential informant, or name a corporate officer that formed the basis of JPM's unique knowledge about Missfresh's valuation that rendered its opinion false. Without such an allegation, the Complaint does not meet Rule 9's requirements.

### C.      Cause of Action Four

Plaintiff's fourth cause of action is for constructive fraud. A defendant is liable for constructive fraud only if she is in a "fiduciary or confidential relationship" with the plaintiff. *See Prakaspalan v. Engstrom, Lipscomb, & Lack*, 223 Cal. App. 4th 1105, 1131 (2014). "A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." *Davies v. Krasna*, 14 Cal. 3d 502, 510 (1975). California courts have found that a confidential relationship exists, for instance, between an adoption agency and parents surrendering a child, *see Tyler v. Children's Home Soc'y*, 29 Cal. App. 4th 511, 549 (1994), or an attorney with unique ethical obligations who deceived and impregnated a vulnerable client, *see Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383 (1983). Here, Plaintiff has not plausibly alleged that JPM "purported to act" in Plaintiff's best interest. *See Prakaspalan*, 223 Cal. App. 4th at 1131. Therefore, cause of action four is dismissed without prejudice.

### D.      Cause of Action Six

Plaintiff's sixth and final cause of action is for violation of California's Unfair Competition Law ("UCL"). This cause of action is derivative of Plaintiff's first five causes of action. *See Olson v. Cohen*, 106 Cal. App. 4th 1209, 1214 (2003). Because those five claims are dismissed, Plaintiff has not stated a claim for violation of the UCL.

## IV.      Disposition

For the foregoing reasons, the Court **GRANTS** the Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint.

The Clerk shall serve this minute order on the parties.

                                                          Initials of Deputy Clerk: kdu